## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

IN RE OSCAR AMOS STILLEY,      )
                            )
           **Petitioner.**       )        **Case No. 08-AP-0001-CVE**
                            )
                            )        <u>**FILED UNDER SEAL**</u>

## OPINION AND ORDER

On February 22, 2008, the Court ordered Oscar Stilley to show cause why his right to practice in the Northern District of Oklahoma should not be automatically suspended due to his failure to notify this Court of two disciplinary proceedings against him in Arkansas.   Dkt. # 2. Stilley filed his Verified Response to Order to Show Cause Why a Reciprocal Suspension Is Not Warranted as to CPC 2002-077 (Dkt. # 7) and Verified Response to Order to Show Cause Showing Why a Reciprocal Suspension Is Not Warranted as to CPC 2006-067 (Dkt. # 8) on April 17, 2008. Stilley has also filed approximately 500 pages of exhibits in support of his responses.

## I.

Stilley is an attorney who is licensed to practice in Arkansas and has represented clients in numerous matters concerning the payment (or non-payment) of state and federal taxes.  In 1996, Stilley filed a complaint on behalf of taxpayers in the Greenwood District of Sebastian County, Arkansas alleging that property taxes assessed against his clients were unconstitutional under the Arkansas Constitution.  The case was dismissed for improper venue and the plaintiffs did not appeal the decision.  Instead, the plaintiffs, through Stilley, filed a new case in the appropriate judicial district, but the case was dismissed because the voluntary payment of state taxes was a bar to recovery under Arkansas law. <u>Oxford v. Perry</u>, 13 S.W.3d 567 (Ark. 2000).  The Arkansas Supreme Court affirmed the dismissal.  <u>Id</u>. at 570.  Another case filed by Stilley challenging the payment of

c/Stilley

property taxes in Sebastian County, <u>Elzea v. Perry</u>, 12 S.W.3d 213 (Ark. 2000), was dismissed by the Arkansas Supreme Court for the same reason.  <u>Id</u>. at 215.  Stilley was not deterred by the decisions in <u>Oxford</u> and <u>Elzea</u> and, on March 19, 2002, Stilley filed a new lawsuit against Sebastian County and other defendants challenging the same taxes.  <u>Parker v. Perry</u>, 131 S.W.3d 338 (Ark. 2003).  The Arkansas Supreme Court found that the doctrine of <u>res judicata</u> prevented the plaintiffs from relitigating the same issues and affirmed the trial court's decision to sanction Stilley for filing a frivolous lawsuit.  <u>Id</u>. at 109-10.

In August 2000, Stilley attempted to place an initiative on the Sebastian County ballot to reduce the county sales tax from one percent to half of a percent.  His petition was initially accepted by Sebastian County Clerk but the county filed a lawsuit challenging the validity of Stilley's petition.  The trial court issued a writ of mandamus striking the petition, because the petition was facially invalid.  Stilley appealed the trial court's decision to the Arkansas Supreme Court, but his appeal was rejected.  <u>Stilley v. Henson</u>, 28 S.W.3d 274 (Ark. 2000).  Stilley filed another case raising the same issues in Crawford County, Arkansas and the Arkansas Supreme Court sanctioned Stilley for filing a frivolous appeal raising issues that had previously been decided.  <u>Stilley v. Hubbs</u>, 40 S.W.3d 209 (Ark. 2001).

On March 26, 2002, Stilley filed an original action in the Arkansas Supreme Court on behalf of Robert White and filed a 70 page supporting brief.  <u>See</u> <u>White v. Priest</u>, 73 S.W.3d 572 (Ark. 2002).  The plaintiff sought to pursue a ballot initiative capping the salary of state employees at $100,000, and claimed that any taxes raised to pay salaries in excess of $100,000 should be classified as an illegal exaction.  In addition to filing the case as an original action in the Arkansas Supreme Court, he also named each justice as a defendant because the justices of the court are state

2

employees.  Stilley asked the entire Arkansas Supreme Court to recuse itself from the case and

appoint an independent tribunal because the justices were named defendants and the court had

previously exhibited hostility towards Stilley.  On May 17, 2002, the Arkansas Supreme Court

struck the plaintiff's 70 page supporting brief due to Stilley's repeated use of "strident, disrepectful

language" and his blatant disregard of judicial precedent.  Dkt. # 10, at 36-37.  The Arkansas

Supreme Court cited the following excepts from Stilley's brief as evidence of his disrespectful tone:[1]

> It is also all too possible that the Court will simply decline to rule consistently, upholding *Kurrus* when that is convenient, blithely ignoring *Kurrus* when consistency of decision making will not bring the desired result.

> *   *   *

> Therefore, it appears that the only persons in this Act receiving more than $100,000 per year are judicial officers.  Why then did the Court falsely claim that this Act supported their theory that many executive branch employees get over $100,000.

> *   *   *

> The Court's action in pretending to raise a claimed conflict on the part of the Governor, on such flimsy grounds, indicates a fear on the part of the justices that an impartial tribunal will decide the case honestly but contrary to the way that this Court would decide the case.

> *   *   *

> It grieves undersigned counsel to be forced to recount part of the many serious and apparently intentional wrongs that the members of this Court has [sic] committed, as part of their claim for recusal.  However, by refusing to honestly consider a fair claim for disqualification, made as gently as possible, the Court puts undersigned counsel in the position of having to raise these issues to protect his rights and the rights of his clients.

> *   *   *

---

[1]     Stilley has not provided the Court with a copy of his brief in <u>White</u>, and the Court was required to refer to the Arkansas Supreme Court's order to find excerpts from Stilley's stricken brief.

3

The Court simply left its decision intact even though its reasoning is wholly irreconcilable with prior decisions of the Court.  This leaves two possibilities.  One, the court, in its original opinion intentionally lied about the citation of these authorities.  These authorities do in fact annihilate the Court's reasoning and ruling on the parol evidence question in this case.  If this is the basis for the oversight, the Court and each of its members necessarily demonstrate rank prejudice against Appellant and should recuse.

*   *   *

The other possibility is that the Court accidentally overlooked these authorities, although they were cited and included in the lists of authorities, and although these cases were discussed at length at pages 2-4 of the Appellant's reply brief.  If this is the problem, Appellant wishes to hear the reason, if any, that Appellant should be expected to trust the competence of the Court in the decision of this cause.

*   *   *

By this means, any reader of this motion may examine Exhibit "1," and compare same to the opinion in *Roberts v. Priest*, and thus know that the *Roberts* Court wilfully and knowingly ignored the principal argument of the Intervenors, because the argument was irrefutable.

*   *   *

The decision of the Court, coupled with the Court's history of refusing to correct blatant and manifest error upon request for rehearing, requires that undersigned counsel make this fact known to the public.  Publicity is the cure for government evils.  Most certainly, a refusal to acknowledge and adjudicate arguments, solely because they provide irrefutable proof in favor of a position disliked by the Court, is a government evil that must be stamped out.

*   *   *

It seems the Court knew in advance that its ruling would not withstand any critical analysis, and wished to stifle any pleading that would expose the weakness of the Court's opinion.

*   *   *

This simply shows that the Court reacts in anger to despised arguments by undersigned counsel that it cannot logically refute.  This behavior is exactly the sort for which the bench and bar have fallen into great disfavor and distrust with the general public in Arkansas.

4

*   *   *

What is required, in other words, is a return to *stare decisis*, and adherence to established legal rules even when the judge or justice prefers a result different from that required by the law.  This conduct has not stopped.  Rather it has intensified.

*   *   *

The list of cases in which the Court has acted prejudicially to undersigned counsel is by no means complete.  On the contrary, this is the tip of the iceberg.  This Court has repeatedly shown that it will declare the law one way on undersigned counsel's cases, and the opposite on cases by other individuals.

Id. at 38-40.  The Arkansas Supreme Court dismissed White for lack of jurisdiction, because claims for illegal exaction must be filed in a trial court rather than the Arkansas Supreme Court.  White, 73 S.W.3d at 575.  The court also referred Stilley to the Arkansas Supreme Court Committee on Professional Conduct ("the Committee") for investigation of possible ethical violations.

The Committee filed a complaint against Stilley based on the stricken brief and permitted Stilley to file a written response to the charges.  Dkt. # 10, at 31.  In a confidential decision dated November 19, 2002, Panel A of the Committee suspended Stilley's license to practice law for three months and fined him $1,000.  Id. at 67.  Stilley exercised his right to request a public hearing and sought de novo review by a separate panel of the Committee.  The new panel was designated as Panel B.  Stilley disputed the Committee's authority to issue a disciplinary sanction and he sent subpoenas to each justice on the Arkansas Supreme Court ordering them to appear and give testimony concerning their alleged bias against Stilley.  The Arkansas Supreme Court quashed the subpoenas on February 14, 2003.[2]  Id. at 68.  Stilley filed a motion asking the court to reconsider its

---

[2]     It also appears that Stilley filed a civil lawsuit against each justice of the Arkansas Supreme Court under 42 U.S.C. §§ 1983 and 1985 in federal court in the Eastern District of Arkansas.  See Dkt. # 10, at 114 (motion to dismiss lawsuit in Eastern District of Arkansas against Justice Ray Thornton of the Arkansas Supreme Court).

decision to quash his subpoenas.  He also asked the justices to respond to his motion individually.
Id. at 90.  On January 6, 2005, the Committee denied Stilley's motion for reconsideration.  Id. at
104.  Stilley filed a motion for specific findings on his request to subpoena the justices of the
Arkansas Supreme Court and, in addition, posed eight specific questions for the Committee to
answer.  Id. at 108-13.  The Committee answered Stilley's questions to the extent that the answers
could not be construed as an advisory opinion, but otherwise denied Stilley's motion.  Id. at 144-48.
On May 4, 2006, Panel B voted to suspend Stilley's license for six months but advised Stilley that
the suspension would be stayed if he appealed the decision to the Arkansas Supreme Court.  Dkt.
# 10-2, at 2.  Stilley appealed the Committee's decision, and the Arkansas Supreme Court upheld
Stilley's suspension on June 21, 2007.   Stilley v. Supreme Court Committee on Professional
Conduct, 259 S.W.3d 395 (Ark. 2007).[3]

    While that disciplinary proceeding was pending, Stilley continued to file lawsuits on behalf
of himself and others concerning the payment of allegedly illegal state taxes.  See Parker, 131
S.W.3d 338 (Ark. 2003) (issues raised in the case were decided in Elzea and res judicata barred
relitigation of issues in subsequent suit); Jones v. Double "D" Properties, Inc., 98 S.W.3d 405 (Ark.
2003) (tax sale of property formerly owned by Robbie and Buck Jones complied with statutory

_____

[3]     The Arkansas Supreme Court affirmed Stilley's six month suspension on June 21, 2007.
        According to Stilley, he filed a motion to stay imposition of the suspension pending a
        decision on his petition for writ of certiorari to the United States Supreme Court and his
        motion was granted on September 13, 2007.  Dkt. # 10, at 5.  The Supreme Court denied
        Stilley's petition for writ of certiorari on February 19, 2008.  Stilley v. Supreme Court of
        Arkansas Committee on Professional Conduct, 128 S.Ct. 1248 (Feb. 19, 2008) (order
denying        petition for writ of certiorari).  Therefore, Stilley did not begin serving the
        suspension until at least February 19, 2008.  On February 22, 2008, this Court
        ordered Stilley to show cause why he should not be suspended from practicing in this
        Court.  Dkt. # 2.

requirements and constitutional claims alleged in third-party complaint were not raised in a timely manner).  In Parker, the trial judge, James R. Marschewski, determined that Stilley filed a frivolous lawsuit and sanctioned him twice in the amounts of $14,421.16 and $2,196.81.  Dkt. # 9, at 58.  On September 2, 2004, almost two years after sanctions were imposed, Judge Marschewski held a hearing to review Stilley's compliance with the sanction order.  Id.  Stilley had not paid the $14,421.16 sanction and Judge Marschewski entered an order setting additional conditions for compliance with the sanction order.  In addition to the fine, Stilley was required to file a report under seal listing all of his cases and clients and to deposit any funds he earned with the court clerk.  Id. at 59.  Stilley appealed the supervision order and filed a civil lawsuit in federal court in the Western District of Arkansas against Judge Marschewski.  Stilley v. Marshewski, 04-CV-2225-GTE (W.D. Ark) ("Marschewski").  On October 5, 2004, Robbie and Buck Jones filed a new case in federal court as pro se plaintiffs, but it appeared that Stilley was assisting the Joneses with the lawsuit. Jones v. Double "D" Properties, 04-CV-2220-GTE (W.D. Ark.) ("Jones").  Although Stilley was not a party or counsel of record in Jones, the complaint was similar to the third-party complaint filed by Buck Jones in state court in his previous lawsuit and it raised concerns that Stilley was using Jones to relitigate previously-decided issues.  Dkt. # 9, at 59.  The court dismissed the lawsuit because the same issues had been litigated in the Joneses' previous state court lawsuit.

In Marschewski, Judge Garnett T. Eisele dismissed the lawsuit under the Rooker-Feldman doctrine as an impermissible appeal of a state court judgment to a federal court.  Judge Eisele sanctioned Stilley for filing a frivolous lawsuit, awarded the defendants attorney fees and costs, and imposed filing restrictions against Stilley.  He also referred Stilley to the Committee for investigation of possible ethical violations.  Stilley appealed the sanction order to the Eighth Circuit.

The Eighth Circuit upheld the sanction order and noted that it was "troubled by Stilley's mischaracterization of the record as to the applicability of Rule 11's safe-harbor provision . . . ." Stilley v. Marschewski, 182 Fed. Appx. 611, 612 (8th Cir. May 26, 2006).

On July 11, 2006, the Committee filed a new complaint against Stilley arising out of his conduct in Jones and Marschewski, and an amended complaint was filed on November 15, 2006. The Committee charged Stilley with assisting a pro se plaintiff in filing a frivolous lawsuit and lying about his participation in the lawsuit during sworn testimony before Judge Marschewski. The Committee also learned that Stilley threatened to initiate criminal proceedings and file a disciplinary charge against Judge Marschewski if he did not rule in Stilley's favor in Parker. Panel A of the Committee recommended that Stilley be suspended for 24 months based on numerous ethical violations. Dkt. # 9, at 71. The Committee found that Stilley (1) assisted Robbie and Buck Jones in drafting a complaint for a federal lawsuit raising the same claims that had been dismissed in state court; (2) lied to a judge about his participation in the Jones lawsuit; (3) drafted a pro se complaint for Robbie and Buck Jones using the same "strident" language for which he had been disciplined by the Committee; and (4) attempted to coerce Judge Marschewski with the threat of criminal prosecution if he did not rule in favor of Stilley's clients in Parker. Dkt. # 9, at 62-68. Stilley requested a public hearing before Panel B and a hearing was held on December 14, 2007. At the hearing, Stilley claimed that the disciplinary proceedings violated his federal constitutional rights to due process and free speech, but the Committee stated that it lacked the authority to consider his arguments. Dkt. # 9-2, at 16. However, Stilley was permitted to make a record of his arguments with a stenographer present after the hearing was completed. The Committee voted to initiate disbarment proceedings and automatically imposed an interim suspension against Stilley until the

8

proceedings were resolved.  Id. at 30-31.  Stilley filed several motions, including a motion to stay the automatic suspension, but all of his motions were denied.  Id. at 89.  The disbarment proceedings have not been completed but it is clear that Stilley's license to practice law in Arkansas remains suspended until those proceedings are resolved.

On January 30, 2008, Stilley entered an appearance in United States v. Greene, 04-CR-209-HDC ("Greene"), in the Northern District of Oklahoma, even though defendant Michael Don Greene was already represented by an assistant public defender.  In the entry of appearance, Stilley stated that he was "licensed and in good standing in the bar of the Northern District of Oklahoma."  Dkt. # 121, at 1.  Stilley also stated that he was "familiar with the local rules and able to abide by same." Id.  The United States filed a notice of suspension informing the Court that Stilley's right to practice law in Arkansas was suspended on an interim basis pending the outcome of disbarment proceedings. Dkt. # 125.  At Greene's February 5, 2008 sentencing hearing,[4] Stilley attempted to appear on behalf of the defendant and Judge H. Dale Cook heard argument concerning Stilley's interim suspension by the Committee.  Judge Cook did not permit Stilley to represent Greene because, under LCvR 83.6, Stilley's interim suspension operated as an automatic suspension of his right to practice in this district.  Dkt. # 126.

## II.

In his notice of suspension, Stilley argues that LCvR 83.6 is unconstitutional to the extent that it permits this Court to automatically suspend an attorney's right to practice in this district

---

[4]     The February 5, 2008 sentencing hearing was a resentencing, because the Tenth Circuit Court of Appeals had previously remanded the case for further explanation by Judge Cook of his decision to impose a fine that exceeded the statutory maximum of $250,000.  Id., Dkt. 107, at 30.

without ensuring that the disciplinary proceedings in another jurisdiction complied with the due process requirements of the United States Constitution. Dkt. # 1, at 6-7. However, this argument does not directly appear in his responses to the Court's order to show cause.[5] Instead, he challenges the constitutionality of the procedures employed by the Committee and the Arkansas Supreme Court in disciplinary matters and asserts that those proceedings violated his right to procedural due process under the United States Constitution. As will be discussed below, Stilley's arguments implicate the

---

[5]        In his motion for an order to show cause, Stilley challenges LCvR 83.6 as unconstitutional. Dkt. # 1, at 4-5. The Court notes his concerns and finds that Court's local rule should be applied so that no attorney is disciplined without ensuring that he or she receives notice and an opportunity to be heard before reciprocal discipline is imposed. Local Rule 83.6(d) states that an attorney is entitled to a hearing before any suspension in excess of two years is imposed but, for a suspension less than two years, reciprocal discipline is automatically issued. However, the Federal Rules of Appellate Procedure provide a different procedure. Rule 46(b) of the Federal Rules of Appellate Procedure states:

> (1) **Standard**. A member of the court's bar is subject to suspension or disbarment by the court if the member:
>
>> (A) has been suspended or disbarred from practice in any other court; or
>>
>> (B) is guilty of conduct unbecoming a member of the court's bar.
>
> (2) **Procedure**. The member must be given an opportunity to show cause, within the time prescribed by the court, why the member should not be suspended or disbarred.
>
> (3) **Order**. The court must enter an appropriate order after the member responds and a hearing is held, if requested, or after the time prescribed for a response expires, if no response is made.

The Court has issued an order to show cause notifying Stilley of the actions that may subject him to discipline and has given him an opportunity to submit a written response. Before disciplining Stilley, this Court will follow the procedure set forth in the Federal Rules of Appellate Procedure and refrain from issuing reciprocal discipline until Stilley has been given a chance to request a hearing. To the extent that Stilley challenges Local Rule 83.6, the Court has considered Stilley's arguments and will ensure that he receives notice and an opportunity to be heard before Stilley is disciplined. Therefore, Stilley's challenge to LCvR. 83.6 is moot.

Rooker-Feldman doctrine preventing direct federal court review of a state court judgment and, under the standard of review applicable to attorney disciplinary proceedings in federal court, this Court must apply a limited standard of review to Stilley's claims.

Under the Rooker-Feldman doctrine, this Court lacks the authority to review the final judgment of a state court. See District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983); Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923). "The Rooker-Feldman doctrine prevents the lower federal courts from exercising jurisdiction over cases brought by state-court losers challenging state-court judgments rendered before the district court proceedings commenced." Erlandson v. Northglenn Municipal Court, 528 F.3d 785 (10th Cir. 2008) (quoting Mann v. Boatright, 477 F.3d 1140, 1145 (10th Cir. 2007)). In addition to foreclosing review of claims actually raised before the state court, the Rooker-Feldman doctrine also prevents a federal district court from considering issues that are inextricably intertwined with issues ruled upon by the state court. Facio v. Jones, 929 F.2d 541, 543 (10th Cir. 1991). Attorney discipline matters are treated no differently than any other state court judgment and "the *Rooker-Feldman* doctrine eliminates most avenues of attack on attorney discipline" issued by state courts. Johnson v. Supreme Court of Illinois, 165 F.3d 1140, 1141 (7th Cir. 1999). While an attorney may obtain prospective relief from a facially unconstitutional rule of professional practice, a federal court may not issue a retrospective judgment based upon a finding that an attorney was improperly disciplined by a state court. Centifanti v. Nix, 865 F.2d 1422 (3d Cir. 1989).

In this case, Stilley is asking this Court to review the disciplinary proceedings in Arkansas and the final judgment issued by the Arkansas Supreme Court and to "issue a well reasoned opinion saying that the Arkansas proceedings were not taken and had in compliance with due process." Dkt.

11

# 7, at 25; Dkt. # 8, at 23.   The Court lacks jurisdiction to grant the relief requested by Stilley, because the issue before this Court is whether reciprocal discipline is appropriate.   Stilley was disciplined by the Arkansas Supreme Court and that court's decisions must be given the same effect as any other decision by the highest court of a state.   In effect, Stilley is asking this Court to review the constitutionality of the proceedings in Arkansas and issue a declaratory judgment finding that the disciplinary proceedings violated Stilley's right to due process under the federal constitution. This type of retrospective review is barred by the <u>Rooker-Feldman</u> doctrine, because this type of review is nothing more than a collateral attack on a state court judgment. In a reciprocal disciplinary proceeding such as this, a federal court must show a "high degree of respect" to the state court's findings and should generally impose similar discipline to that issued by the state court.   <u>In re Williams</u>, 398 F.3d 116 (1st Cir. 2005).   This Court should decline to impose reciprocal discipline against Stilley only if the Court finds by clear and convincing evidence:

> (i) a deprivation of procedural due process (usually defined as a want of notice or opportunity to be heard), (ii) an infirmity of proof of misconduct such as would "give rise to a clear conviction on our part that we could not consistently with our duty accept as final the [state court's] ultimate conclusion," or (iii) the existence of some other serious impediment to acceptance of the state court's conclusion.

<u>Id</u>. at 119 (citing <u>Selling v. Radford</u>, 243 U.S. 46, 51 (1917)).   Even if the Court finds that Stilley's due process rights were violated, the Court may not aside any disciplinary sanctions against Stilley by the Arkansas Supreme Court or the Committee, or issue an advisory opinion condemning the proceedings in Arkansas.

Stilley does not contest the facts underlying the imposition of discipline against him but, instead, challenges the procedures employed by the Committee and the Arkansas Supreme Court

when disciplining him.[6]  In connection with his six month suspension for filing an improper brief, Stilley argues that he was denied his right to due process under the Fourteenth Amendment on the United States Constitution because (1) the Arkansas Supreme Court violated Stilley's right to due process by quashing the subpoenas issued by Stilley; (2) the justices of the Arkansas Supreme Court failed to recuse from hearing Stilley's appeal of the Committee's disciplinary sanction; and (3) the alleged disciplinary violation constitutes an ex post facto punishment.  Concerning the pending disbarment proceedings against Stilley, he claims that (1) the Committee refused to hear his constitutional arguments before recommending disbarment; (2) the Arkansas Supreme Court improperly quashed a subpoena issued to Justice Tom Glaze by Stilley; (3) Stilley did not violate existing law by filing a strident brief targeting the justices of the Arkansas Supreme Court; and (4) the Committee is a non-governmental entity that has no authority to suspend Stilley's license to practice law.

---

[6]     The Court notes that Stilley has unsuccessfully raised the same arguments before other federal courts and he has been denied the right to practice before several federal courts. United States v. Ensign, 491 F.3d 1109 (9th Cir. 2007) (affirming decision of district court to deny Stilley's request to appear pro hac vice due to concerns that Stilley would not comply with the district court's rules or orders); Stilley v. Bell, 155 Fed. Appx. 217 (6th Cir. Nov. 25, 2005) (relying on numerous instances of attorney misconduct and sanctionable conduct when affirming the Western District of Michigan's decision to deny Stilley's application to practice in that district); United States v. Lobello, 2007 WL 3037126 (D. Nev. Oct. 11, 2007) (granting the government's motion to disqualify Stilley as defense counsel based on his disciplinary history); United States v. Bennett, 2006 WL 2703170 (D. Haw. Sep. 27, 2006) (denying Stilley's application for admission pro hac vice because he failed to disclose six month suspension imposed by Arkansas Supreme Court).

**A.**

Stilley argues that the Committee and the Arkansas Supreme Court repeatedly violated his due process rights when they suspended him for six months for filing an improper brief.  A review of the record shows that Stilley's claims are meritless and his disciplinary proceedings were not tainted due to a lack of due process.  Stilley's comments about the Arkansas Supreme Court in <u>White</u> clearly merited the imposition of disciplinary sanctions and this Court may rely on the six month suspension as a basis to impose reciprocal discipline on Stilley.

On May 17, 2002, the Arkansas Supreme Court filed a <u>per</u> <u>curiam</u> order striking a 70 page brief filed by Stilley in an original action before the Arkansas Supreme Court.  The purpose of the case, as stated by the Arkansas Supreme Court, was to "'interrogate' the present justices 'eyeball-to-eyeball' at a hearing in a discovery fashion in an attempt to find reasons why the court is hostile towards him."  Dkt. # 10, at 35.  The Arkansas Supreme Court quoted approximately two pages of material from Stilley's brief to highlight the hostile nature of the stricken brief.  <u>Id</u>. at 38-40.  The Arkansas Supreme Court attempted to sift through Stilley's brief to determine if parts of the brief, rather than the entire brief, could be stricken, but the "intemperate and distasteful language" was so pervasive that the entire brief was stricken.  <u>Id</u>. at 40.  Because Stilley's actions also constituted a breach of the rules of professional conduct, the court referred the matter to the Committee for further investigation.  Panel A of the Committee determined that Stilley violated rules 1.1, 1.7(b), 3.4(c) and 8.4(d) of the Arkansas Rules of Professional Conduct and suspended his right to practice for three months.  Stilley exercised his right to <u>de</u> <u>novo</u> review by a separate panel of the Committee, and Panel B determined that Stilley should have been suspended for six months.  Stilley exhausted his appellate remedies and this suspension is a final judgment of the Arkansas Supreme Court.  <u>See</u>

14

Stilley v. Supreme Court Committee on Professional Conduct, 259 S.W.3d 395 (Ark. 2007) (affirming six month suspension imposed by the Committee).  This Court must afford the final decision of the Arkansas Supreme Court the same weight as any other judicial decision by a state court, and this Court must impose reciprocal discipline unless Stilley can show that the decision resulted from a lack of due process.  See Williams, 398 F.3d at 119.

Stilley argues that the justices of the Arkansas Supreme Court violated his due process rights and the Arkansas Rules of Professional Conduct by quashing Stilley's subpoenas.[7]  Stilley issued subpoenas to each justice of the Arkansas Supreme Court and ordered them to appear at a deposition or hearing to explain the reasoning and deliberative process behind prior opinions of the court. However, he was not disciplined for attempting to subpoena the justices of the Arkansas Supreme Court; he was disciplined for filing an improper brief.  The Committee suspended Stilley for six months because he filed a brief showing disrespect for the Arkansas Supreme Court and its justices. The Arkansas Supreme Court's order striking Stilley's brief speaks for itself, and the justices could not have offered any testimony relevant to that court's decision to strike Stilley's brief.  Although Stilley perceives that the Arkansas Supreme Court is biased against him, the justices' personal beliefs about Stilley were irrelevant to his disciplinary proceedings and the Arkansas Supreme Court's decision to strike Stilley's subpoenas does not show that Stilley was disciplined in violation of the Due Process Clause of the Fourteenth Amendment.

---

[7]    As an initial matter, the Court will not consider Stilley's claim that the justices violated the Arkansas Rules of Professional Conduct, because this is not the appropriate forum to raise such arguments.  Stilley must raise this issue as permitted under Arkansas law, but this Court may not act as a disciplinary tribunal over the justices of the Arkansas Supreme Court.

Stilley argues that each justice of the Arkansas Supreme Court should have recused from Stilley's appeal of his six month suspension, because they also ruled on the merits of <u>White</u> in which Stilley named the justices as defendants.  It is not clear how this argument implicates Stilley's right to procedural due process.  First, Stilley's disciplinary case was heard before two panels of the Committee and he was given multiple chances to appear and be heard.  Stilley exercised every opportunity to appear before the Committee or file briefs with the Committee.  The Committee was not comprised of any justices of the Arkansas Supreme Court and it twice found that Stilley violated his professional obligations before Stilley's appeal was heard by the Arkansas Supreme Court.  This shows that he had notice of the charges against him and opportunity to be heard by an independent tribunal.  Stilley's second argument, that the justices had a conflict of interest with his disciplinary appeal because he also named them as defendants in <u>White</u>, is also meritless.  The Arkansas Supreme Court dismissed the case and ordered Stilley to show cause why he should not be sanctioned for filing a frivolous lawsuit.  <u>White</u>, 73 S.W.3d at 579.  This Court agrees that <u>White</u> was frivolous under a purely objective standard.  The Arkansas Supreme Court properly forbade Stilley from manufacturing a conflict of interest in a subsequent disciplinary proceeding by filing a meritless lawsuit against the justices.  As in most states, the Arkansas Supreme Court is the highest tribunal for attorney discipline matters and, absent a compelling reason, Stilley has not shown that the Arkansas Supreme Court should have recused from hearing his disciplinary appeal.  The mere fact that the Arkansas Supreme Court heard Stilley's appeal of his six month suspension was not a violation of his right to procedural due process.

Stilley claims that the Arkansas Supreme Court had not previously recognized that an appellate court could strike a brief for intemperate or strident language, and he was disciplined in

violation of the Ex Post Facto Clause of the United States Constitution.[8]  U.S. Const. art. I, § 10, cl.

1.  Stilley's argument ignores the precedent cited in the Arkansas Supreme Court's order and wholly

lacks merit.  The Arkansas Supreme Court cited a previous case in which that court approved a trial

court's decision to strike a brief for intemperate language directed at the court and cited the

Arkansas Supreme Court's own rules authorizing contempt sanctions for the use of hostile language

toward the court.  See McLemore v. Elliott, 614 S.W.2d 226 (1981); Ark. Sup. Ct. R. 1-5 ("No

argument, brief, or motion filed or made in the Court shall contain language showing disrespect for

the circuit court.").  In fact, Stilley's argument underscores the hostility and disrespect that he

showed for the Arkansas Supreme Court in his brief, and this Court will not second guess the

Arkansas Supreme Court's decision to strike his brief, or the Committee's decision to discipline

Stilley for showing disrespect to the court.  Whether or not the Arkansas Supreme Court had ruled

on the precise issue raised by Stilley, he should have been aware that directly attacking the integrity

of an appellate court violated his ethical obligations and could have subjected him to an appropriate

disciplinary sanction.  See In re Surrick, 338 F.3d 224 (3d Cir. 2003) (attorney had sufficient notice

that he could be disciplined for making statement about judge showing a reckless disregard for the

truth, and he was not disciplined in violation of the Due Process Clause).  Stilley was not disciplined

in violation of the Ex Post Facto Clause or the Due Process Clause.

---

[8]     The Court notes that the Ex Post Facto Clause applies only to criminal statutes adopted by a state.  Kansas v. Hendricks, 521 U.S. 346, 361 (1997).  Stilley was not subject to a criminal penalty nor were his disciplinary proceedings governed by Arkansas criminal law.  The Court will construe his argument as a due process argument to the extent that he claims he lacked notice that his conduct violated the Arkansas Rules of Professional Conduct.

**B.**

Stilley also claims that the Committee instituted disbarment proceedings against him and imposed an interim suspension without notice or an opportunity to be heard, and he was not required to report these proceedings to the Northern District of Oklahoma as a pending disciplinary matter. He raises four arguments in support of his position that the interim suspension and disbarment proceedings are unconstitutional and may not be used as a basis to impose reciprocal discipline.

Stilley has admitted the pertinent facts concerning the pending disbarment proceedings and his underlying conduct shows a troubling pattern of conduct concerning his continued hostility toward the judicial system and judicial officers.  Dkt. # 9, at 15.  As noted above, Stilley has continually filed lawsuits concerning the same legal issues in state and federal court and each case has been dismissed.  The conduct giving rise to Stilley's current problems began after the Arkansas Supreme Court affirmed the trial court's decision upholding a tax sale of the Joneses' property. Jones, 98 S.W.3d 405.  Stilley represented the Joneses and raised state and federal constitutional issues in an attempt to vacate the tax sale, but Stilley's arguments were unsuccessful.  After Jones was decided, Stilley was subject to a contempt order by Judge Marschewski requiring him to report all of his cases and earnings until he paid a sanction issued in Parker.  On October 5, 2004, the Joneses filed a case in federal court alleging the same claims as in their prior state court case, and the complaint was signed by Buck Jones.  Stilley has subsequently admitted that he drafted the complaint, but he initially claimed that he had no involvement with the Joneses' lawsuit in federal court.  Dkt. # 9, at 60.  The Joneses' federal case was dismissed and the dismissal was affirmed on appeal by the Eighth Circuit.  Jones v. Double "D" Properties, Inc., 179 Fed. Appx. 401 (8th Cir. May 5, 2006).  On October 10, 2004, Stilley filed a case against Judge Marschewski and others in

the Western District of Arkansas, and the case was assigned to Judge Eisele.   Judge Eisele sanctioned Stilley for filing a frivolous lawsuit and referred Stilley to the Committee due to alleged misconduct by Stilley during the case.

The Committee found that Stilley violated at least four rules of professional conduct.  First, Stilley violated Rule 3.1 by assisting the Joneses in drafting a complaint reasserting claims that had previously been dismissed.  Id. at 61.  Second, he violated Rule 3.3 by lying to Judge Marschewski in sworn testimony during a contempt hearing about his involvement with the Joneses' federal court case.  Id. at 61-62.  Third, the complaint in Jones contained many similar statements as his improper brief in White and Stilley's conduct in Jones constituted 11 separate ethical violations.  Most importantly, Stilley showed blatant disregard for the disciplinary action of the Committee in a previous case and his conduct showed a continued lack of respect for the courts and judicial officers. Fourth, Stilley violated Rule 8.4 by threatening Judge Marschewski with criminal prosecution if he did not rule in favor of Stilley in Parker.  Due to the seriousness of Stilley's misconduct, the Committee recommended that Stilley's license to practice be suspended for 24 months.  Stilley requested a de novo hearing before a new panel of the Committee and a second panel was convened. After a public hearing, Panel B initiated disbarment proceedings and suspended Stilley's right to practice pending resolution of disbarment proceedings in the Arkansas Supreme Court.  Stilley filed motions for reconsideration, for additional findings of fact and conclusions of law, and a stay of the suspension order, but his motions were denied.  Dkt. # 9-2, at 89.  The disbarment proceedings are pending before the Arkansas Supreme Court.

Stilley claims that he was denied an opportunity to be heard on his constitutional claims before the Committee issued its decision and the order of interim suspension is unconstitutional. However, the initiation of disbarment proceedings results in a interim suspension and Stilley may raise his constitutional arguments before the Arkansas Supreme Court.  See Wood v. Supreme Court Committee on Professional Conduct, 38 S.W.3d 310 (Ark. 2001).   Under the Arkansas Supreme Court's procedures, the sole issue that the Committee must decide is whether grounds for disbarment exist.  Procedures Regulating Professional Conduct of Attorneys § 17.  The transcript of the hearing before Panel B shows that Stilley was notified of the charges against him and given an opportunity to present and cross-examine witness.  Stilley cites In re Ruffalo, 390 U.S. 544 (1968), to support his argument that he has a right to raise his constitutional arguments before an interim suspension may be imposed.  However, Ruffalo simply held that an attorney must be given fair notice of the charges against him before a disbarment hearing, and the failure to provide a clear statement of the charges violated the attorney's right to procedural due process.  Stilley does not claim that he lacked notice of the charges against him or that he was denied a hearing.  Instead, he argues that the failure to consider his constitutional arguments was a violation of due process.  However, this claim is not ripe.  While Stilley may disagree with the charges against him, the Committee's procedures satisfied the requirements of procedural due process under Ruffalo and Stilley may still raise his constitutional claims before the Arkansas Supreme Court.[9]

---

[9]      Stilley has not cited any procedural rules that would allow him to make a motion for directed verdict or summary judgment, like the motions Stilley tried to raise at his hearing, and it is not clear that the Committee had authority to consider Stilley's constitutional arguments. A plain reading of Arkansas' Procedures Regulating Professional Conduct of Attorneys shows that disciplinary proceedings are "neither civil nor criminal" in nature and the rules of civil procedure to not apply.  Procedures Regulating Professional Conduct of Attorneys §§ 1, 7, 8.

Stilley's remaining arguments concerning his interim suspension do not show that the Committee disciplined him in violation of the Due Process Clause. Stilley argues that the Arkansas Supreme Court violated his due process rights by quashing his subpoena to Justice Glaze. He also claims that the Arkansas Supreme Court acted out of a desire to punish Stilley rather than to impose the rule of law. These arguments have been considered above and rejected. The personal beliefs of any particular justice of the Arkansas Supreme Court were not relevant to the Committee's decision to recommend disbarment, and Stilley did not have a right to command Justice Glaze to appear at his disciplinary hearing. Stilley's argument concerning the hostility of the Arkansas Supreme Court is also irrelevant, because it is based on his assumption that disbarment proceedings were based on his improper brief in <u>White</u>. The Committee recommended disbarment after considering a wide range of alleged misconduct by Stilley, particularly his conduct before Judge Marshewski and Judge Eisele, and the Arkansas Supreme Court's opinion of Stilley was irrelevant to the Committee's decision. Stilley further argues that the Committee is a non-governmental entity that lacks authority to suspend Stilley's license. Stilley may raise this issue in disbarment proceedings before the Arkansas Supreme Court. However, even if the Court were to assume Stilley's statement is true, this does not show that the Committee denied Stilley notice or an opportunity to be heard before it recommended his disbarment. Stilley has not shown that the Committee violated his right to due process, and the Court may rely on the pending disbarment proceedings and interim suspension as a basis to impose reciprocal discipline against Stilley.

**C.**

Although Stilley does not address his failure to comply with LCvR 83.6, this is also a relevant consideration.  The Court has reviewed the docket sheet and the transcript of the February 5, 2008 sentencing hearing in <u>Greene</u>, and it is clear that Stilley's failure to notify this Court of his six month suspension and interim suspension was intentional.  Stilley's failure to comply with LCvR 83.6 and his conduct during the February 5, 2008 sentencing hearing provide additional grounds for this Court to suspend Stilley's right to practice in this district.

Stilley's entry of appearance stated that he was in good standing with the Court and was familiar with local rules.  <u>Greene</u>, Dkt. # 121, at 1.  However, local rules required Stilley to notify this Court of any disciplinary action taken against him by any other court and Stilley did not comply with this requirement.  The transcript shows that Stilley refused to answer Judge Cook's direct questions about his interim suspension, instead arguing that the local rule was unconstitutional.  <u>Id</u>., Dkt. # 135, at 3-5.  Stilley's statements leave no doubt that he was aware of LCvR 83.6 and intentionally failed to notify the Court of his suspension.  <u>Id</u>. at 5 (Stilley admits that "[the Northern District of Oklahoma] has its Local Rule and I've read that rule and I know what that rule says.").  Stilley reluctantly admitted that he was serving an interim suspension pending the resolution of his disbarment proceedings in Arkansas.  At that time, the government and Judge Cook were unaware of Stilley's six month suspension for filing an improper brief, and Stilley did not disclose this information to Judge Cook.  Although Stilley subsequently disclosed this fact to the Court, this does not cure his prior misrepresentations to Judge Cook or show that his failure to comply with LCvR 83.6 was unintentional.  In fact, Stilley's conduct shows that he would have represented Greene

without notifying the Court of his disciplinary problems in Arkansas, and this should be considered by the Court when imposing reciprocal discipline against Stilley.

## IV.

The Court has determined that Stilley was not subject to attorney discipline in violation of his federal constitutional rights as to his six month suspension for filing a hostile brief or the interim suspension and potential disbarment for repeated litigation misconduct. This Court may rely on Stilley's disciplinary proceedings in Arkansas as a basis for reciprocal discipline in this district. To the extent that Stilley argues LCvR 83.6 is unconstitutional, the Court finds that no reciprocal discipline should be imposed by this Court until Stilley has been given the opportunity to appear at a hearing and fully apprise the Courts of any additional arguments he may have in his defense. Therefore, Stilley may not complain that this Court has deprived him of his right to notice and an opportunity to be heard before reciprocal discipline is issued.

The penalty for violation of LCvR. 83.6 is automatic suspension from the bar of this Court until the attorney can show good cause for lifting the suspension. The suspension of Stilley's right to practice in Arkansas requires this Court to issue reciprocal discipline. The record is also clear that Stilley failed to inform Judge Cook of his disciplinary history and that Stilley would not have complied with LCvR 83.6 if the attorney for the United States had not raised the issue. Stilley's conduct in Greene would independently support the issuance of a disciplinary sanction against Stilley. Stilley purposefully sought to avoid complying with the local rules of this Court, which calls into question his fitness to practice in this district.

23

The undersigned finds that Stilley's right to practice in this district should be suspended pending the resolution of his disbarment proceedings in Arkansas. The Court also finds that the minimum length of any suspension should not be less than six months to ensure consistency with the Arkansas Supreme Court's decision to suspend Stilley's right to practice for filing an improper brief. However, the undersigned is cognizant that Stilley is entitled to a hearing before a judge or panel of judges before any disciplinary sanction is imposed. Local Rule 83.6(d) provides:

> **(d) Right to a Hearing.** This Court shall not impose any disciplinary action affecting an attorney's right to practice before the Court for two (2) years or more until a hearing on the matter has been held before a judge or a panel of judges. The attorney may waive the right to a hearing. At the hearing, the attorney whose conduct is the subject of the complaint shall be afforded an opportunity to appear in person and/or by counsel, to present oral and documentary evidence, to compel the attendance of witnesses or the production of documents, to cross-examine witnesses, and to present argument orally or in writing. If not called by the attorney whose conduct is being investigated, it is within the discretion of the judge or panel to call the complaining party to appear at the hearing.

LCvR. 83.6(d). Regardless of the length of any possible suspension of Stilley's right to practice in this district, Stilley will have thirty days from entry of this Opinion and Order to request a hearing before any disciplinary sanction is imposed. If Stilley fails to request a hearing, this Opinion and Order shall be treated as the final disposition of this matter and Stilley's right to practice in this judicial district shall be suspended. If Stilley requests a hearing, his arguments will be considered de novo to ensure that Stilley receives all rights available to him under the Due Process Clause. Should Stilley request a hearing, he must also supplement the record with updated records from his pending disbarment proceeding in the Arkansas Supreme Court and orders by other state or federal courts limiting his right to practice. Failure to comply with this requirement may constitute an additional basis for disciplinary sanctions against Stilley.

24

**IT IS THEREFORE ORDERED** that petitioner Oscar Stilley's right to practice in the Northern District of Oklahoma is suspended for a minimum term of six months under LCvR 83.6, but in no event may Stilley request that the Court lift his suspension until his disbarment proceedings are concluded.  Upon completion of the disbarment proceedings in Arkansas, Stilley must notify this Court of the result and his suspension will be modified in accordance with the Arkansas Supreme Court's final ruling on Stilley's potential disbarment.  However, in compliance with LCvR. 83.6(d), the Court will stay the imposition of this sanction for 30 days to permit Stilley to request a hearing challenging his suspension.

**IT IS FURTHER ORDERED** that the Court Clerk shall serve this Opinion and Order on Oscar Stilley only.

**DATED** this 30th day of October, 2008.

CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT